Maggie M. WRIGHT, as Administratrix of the Estate of William F. Wright, deceased, Plaintiff,

v.

AMERICAN FLYERS AIRLINE CORPORATION, Defendant (two cases).

Mattie Lettie Brown HELTON, Administratrix of the Estate of Steve R. Brown, deceased, Plaintiff,

v.

AMERICAN FLYERS AIRLINE CORPORATION, Defendant.

Civ. A. Nos. 66–553, 66–554 (Columbia Division), 66–687 (Greenwood Division).

United States District Court
D. South Carolina.

Feb. 14, 1967.

**866**

Lowell W. Ross, Rogers, McDonald & Ross, Columbia, S. C., for plaintiff Maggie M. Wright, as Adm'x, etc.

William T. Jones, Greenwood, S. C., for plaintiff Mattie Lettie Brown Helton, Adm'x, etc.

Charles W. Knowlton, Boyd, Bruton, Knowlton & Tate, Columbia, S. C., Shaw, Pittman, Potts, Trowbridge & Madden, Washington, D. C., for defendant.

## OPINION AND ORDER

RUSSELL, District Judge.

The defendant is a charter airline, incorporated in Texas, but with its flight operations, maintenance department and records located at Ardmore, Oklahoma. On April 22, 1966, one of its planes was engaged in a military charter flight from Fort Ord, California, to Fort Benning, Georgia, with 92 soldiers aboard. While approaching Ardmore for a scheduled refueling and crew change, it crashed, killing 73 soldiers as well as all six of the crew. Suits to recover for wrongful death have already been filed against the defendant in six different districts of

the United States. Included among these are the three actions pending in this Court as titled above. Liability in such actions is predicated, under Oklahoma Law, on defendant's alleged negligence in the operation, maintenance and control of the aircraft.

The defendant has filed a motion, supported by affidavits, to transfer each of the cases pending in this Court to the Eastern District of Oklahoma under the provisions of Section 1404(a), 28 U.S.C. Unquestionably, the actions could originally have been brought in the proposed transferee district and no such question as that involved in Hoffman v. Blaski (1960), 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, arises. This preliminary requirement for entertaining the motions being conceded, the issue is one for the discretion of the Court, guided by the bench marks established in connection with the construction of Section 1404 (a), 28 U.S.C. Since the issues are identical in the three cases, the motions have been heard together and will be disposed of in a single order.

■■ Section 1404(a), which was intended to enlarge the common law power of the Court under the ancient doctrine of *forum non conveniens*,[1] "empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice." Van Dusen v. Barrack (1964) 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945; Continental Grain Co. v. Barge FBL 585 (1960) 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed. 2d 1540. In short, a plaintiff does not have an absolute right to the choice of forum, though, his choice is "a factor for the Court to consider,"[2] and "when other factors are somewhat equally bal-

anced," his choice will be "determinative".[3] As the Court has said in Koster v. (American) Lumbermens Mutual Cas. Co. (1947) 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067, " * * * the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."

■■ Of course, the burden is upon the movant to show by a preponderance of the evidence that the transfer will serve more conveniently the interests of the parties and witnesses and promote the ends of justice. Nor can such preponderance be established merely by the number of witnesses listed. The Court in Glickenhaus v. Lytton Financial Corporation (DC Del.1962) 205 F.Supp. 102, 106, has well stated the ruling principle thus:

"The convenience of witnesses is not weighed from the standpoint of greater number of witnesses involved, but from consideration of the qualitative value of the testimony of particular witnesses."

■ Actually, the issue presented by such a motion covers a wide range of factors which must be weighed by the Court in determining whether the movant has established a preponderance of evidence in his favor. The burden imposed on the plaintiff by the transfer is an important circumstance that must be accorded every consideration in reaching such conclusion.[4]

■ While the convenience of witnesses and parties are important factors, "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in laws foreign to itself." Gulf Oil

---

1. Norwood v. Kirkpatrick (1955), 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789.

2. Oltman v. Currie (DC S.C. 1964) 231 F. Supp. 654, 655.

3. Forester v. Elk Towing Co. (DC Pa. 1965) 242 F.Supp. 549, 550; White v. Employers' Liability Assur. Corp. (DC S.C.1949) 86 F.Supp. 910.

4. The statute makes no provision and authorizes no consideration for convenience of counsel. Henderson v. American Airlines (DC N.Y.1950) 91 F.Supp. 191; Grubs v. Consolidated Freightways, Inc. (DC Mont.1960) 189 F.Supp. 404; Parkhill Produce Co. v. Pecos Valley Southern Ry. Co. (DC Tex.1961) 196 F.Supp. 404.

Corp. v. Gilbert (1947) 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055; Van Dusen v. Barrack, supra, 376 U.S. at p. 643, 84 S.Ct. at p. 823; Nee v. Dillon (1956) 99 U.S.App.D.C. 332, 239 F.2d 953; Travelers Insurance Company v. Stuart (DC Ark.1964) 226 F.Supp. 557; A. C. Samford, Inc. v. United States (DC Ga.1963) 226 F.Supp. 72. Such consideration, as Mr. Justice Goldberg expressed it in the Van Dusen Case (at p. 628 of 376 U.S., at p. 815 of 84 S.Ct.), "highlights the fact that the most convenient forum is frequently the place where the cause of action arose".

Viewing the facts in these cases in the light of the foregoing rules, the Court is of opinion that the interests of justice and the substantial conveniences—especially considering the offer of the defendant to defray the expenses of plaintiffs and their witnesses, afterwards discussed—favor the transfer.

Without question, the conveniences of the witnesses will be served by the transfer. The affidavits filed by the defendant show clearly that the overwhelming number of material witnesses, on the issue of liability, viewed both quantitatively and qualitatively, live in or within reasonable distance of Ardmore. All the persons in charge of the maintenance of defendant's aircraft are there; all the officials in charge of the control tower and plane operations at the scene of the crash are either in Ardmore or in areas nearby within easy traveling distance; all witnesses to meteorological conditions at the time and place of the accident are similarly located.

An important point on the question of liability seems to be the path of the plane immediately before the crash; and its sound, as observed by persons living nearby, was considered relevant by the F.A.A. in its investigation of the accident. Practically all of the possible witnesses on this point live near Ardmore. It was suggested in a companion case, that the surviving passengers would be witnesses on this point and that none of them live in Oklahoma. It may be remarked, too, that none of them live in South Carolina. The uncontradicted affidavits submitted in support of the motion show that in the F.A.A. investigation it was developed that of the fifteen survivors only four were awake and of these statements were taken from two by the F.A.A. Only one of the passengers, it seems, was thought to know enough to be called as a witness at the C.A.B. public hearing.

Another question that may arise is the physical condition of the pilot of the plane and whether the defendant was negligent in entrusting the operation of the plane to him. While it is true some of the medical testimony on this point will be by physicians living in Texas, such witnesses would find an Oklahoma trial far more convenient than one in South Carolina.

On the other hand, so far as this record shows, not a single material witness on the issue of liability lives in South Carolina. The only potential witnesses from this State would offer testimony on the deceased's life expectancy and earning power. The scope of their testimony would be minimal compared with that of the testimony on liability.

The convenience of witnesses definitely argues for transfer. Southern Railway Co. v. Madden (CCA4 1956) 235 F. 2d 198.

So far as the convenience of the parties is concerned, it must be recognized that the proposed transfer would impose added expense upon the plaintiffs and that it would be more convenient for them to have their cases tried in South Carolina. The defendant has, however, minimized this inconvenience by its offer to defray the expenses of the parties, their witnesses and their counsel, if its motion prevails. In the light of this offer, the reduced inconvenience to the parties-plaintiffs must be balanced against the admitted inconvenience to the many witnesses involved on the question of liability.

Without question, the ends of justice will be better served by the transfer. Under the law of South Carolina (which

would prevail if these cases remain in this jurisdiction), "the well-established rule is that the law of the place where the injury was occasioned or inflicted, governs in respect of the right of action, and the law of the forum in respect to matters pertaining to the remedy only." Rauton v. Pullman Co. (1937) 183 S.C. 495, 501, 191 S.E. 416, 419; Oshiek v. Oshiek (1964), 244 S.C. 249, 252, 136 S.E.2d 303; McDaniel v. McDaniel (1963) 243 S.C. 286, 133 S.E.2d 809; Smith v. Southern Railway (1910) 87 S.C. 136, 69 S.E. 18; Leppard v. Jordan's Truck Line (DC S.C.1953) 110 F. Supp. 811. And this rule covers both the issue of liability and the measure of damages. Thus, in the *Rauton* Case, supra, 183 S.C. at p. 502, 191 S.E. at p. 419, the Court said:

"Upon the question of whether the measure of the damages for a tort, committed in one state and sued on in another, is determinable by the law of the forum or by the law of the place where the tort was committed, the great weight of authority supports the doctrine that the *lex loci deliecti* controls. The measure of damages is regarded as pertaining to the substantive, rather than to the merely remedial, rights of the injured person."

To the same effect is Magill v. Seaboard Air Line Railway (1909) 84 S.C. 416, 66 S.E. 561, where the Court held specifically that the right to recover punitive damages in a tort action is controlled by the law of the place where the tort occurred.

I am aware that in New York and possibly in Pennsylvania a new doctrine in conflict-of-laws has been expressed in connection with airplane accidents. In Kilberg v. Northeast Airlines, Inc. (1961) 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526, the New York Court, after concluding that the place of injury in airplane is fortuitous, held that the forum state should protect its citizens by applying its own rules of liability rather than necessarily those of the place of the accident. This doctrine has been reaffirmed by the New York Court. Babcock v. Jackson (1963) 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1. Cf. Richards v. United States (1962) 369 U.S. 1, at p. 12, 82 S.Ct. 585, 7 L.Ed.2d 492. Pennsylvania has apparently reached a somewhat similar conclusion in Griffith v. United Air Lines (1964) 416 Pa. 1, 203 A.2d 796. This new, flexible approach, if adopted here, would be a persuasive, if not controlling argument against transfer. Undoubtedly, this New York rule was an important factor influencing the District Courts of the Southern and Eastern Districts of New York from transferring two similar cases filed against the defendant and arising out of this accident. Certainly, it was the compelling reason against transfer in the later decision in Popkin v. Eastern Air Lines, Inc. (DC Pa.1966) 253 F.Supp. 244, 247.

But South Carolina has not adopted this new doctrine and my duty, under these circumstances, was trenchantly put in Goranson v. Kloeb (CCA Ohio 1962) 308 F.2d 655, 656:

"To our knowledge, Ohio has not adopted the New York dictum. Until the Ohio courts have spoken on the subject we must follow the law as it is. We should not attempt to make new law for the state in conflict with its existing decisions."

As we have seen, the law of this State is clear that the law of Oklahoma will control on the question of both liability and measure of damages. The courts of Oklahoma have a greater "judicial familiarity with the governing laws" and are not congested. The plaintiffs can obtain a quicker trial by a court more "at home" with the controlling law in Oklahoma than in this Court.

Moreover, if substantially all the cases arising out of this accident are transferred, it will be possible to consolidate them for trial, expediting the work of the courts, serving the consideration of expense to all concerned, including the Government, and avoiding possible conflicting conclusions by different courts. See, Continental Grain Co. v. Barge FBL, supra, 364 U.S. at p. 21, 80 S.Ct. at p. 1472;

Cressman v. United Air Lines (DC N.Y. 1958) 158 F.Supp. 404. The mere fact that some courts may not direct transfer does not vitiate this consideration so far as those cases that are transferred are concerned.

■ Weighing all the pertinent factors, I am of opinion that, subject to its agreement to pay reasonable transportation and maintenance costs of plaintiffs, their witnesses and their counsel, the defendant has established by the preponderance of the evidence its right to the transfer of these causes to the Eastern District of Oklahoma.

And it is so ordered.